UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DARYL CORTEZ BLACK,

          Plaintiff,

v.                                  Case No. 3:23-cv-1424-JEP-SJH

JOSEPH CARABETTI, et al.,

          Defendants.

_____

## **ORDER**

### **I. Status**

Plaintiff, an inmate of the Florida Department of Corrections ("FDC"), is proceeding pro se on a Complaint for Violation of Civil Rights under 42 U.S.C. § 1983 (Doc. 1) against a doctor (Defendant Emanoilidis) and two officers (Defendants Carabetti and Weems) based on an incident that occurred at Florida State Prison on February 24, 2021. Plaintiff alleges Defendant Emanoilidis was deliberately indifferent to his serious mental health needs, and Defendants Carabetti and Weems raped him. Doc. 1 at 5. Before the Court are two motions: Defendant Emanoilidis's Motion for Summary Judgment (Doc. 48); and Defendants Carabetti and Weems's Motion for Summary Judgment (Doc. 57). Plaintiff opposes both Motions (Docs. 56, 60).

As relevant to Defendant Emanoilidis's Motion for Summary Judgment, the Court previously dismissed Plaintiff's claim that Defendant Emanoilidis failed to protect him from the alleged sexual assault. Doc. 35 at 10–11, 15–16. The Court permitted Plaintiff to proceed on a claim that Defendant Emanoilidis was deliberately indifferent to his serious psychiatric needs. *Id.* at 12.

## II. Legal Standard

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it may "affect the outcome of the suit under the governing law." *Id.* "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313–14 (11th Cir. 2007). Stated differently, the moving party discharges its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

However, once the moving party has discharged its burden, "Rule 56(e) … requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation omitted). The nonmoving party may not rely solely on "conclusory allegations without specific supporting facts." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Nevertheless, "[i]f there is a conflict between the parties' allegations or evidence, the [nonmoving] party's evidence is presumed to be true and all reasonable inferences must be drawn in the [nonmoving] party's favor." *Allen*, 495 F.3d at 1314.

### III. Analysis

#### A. Defendant Emanoilidis's Motion

Defendant Emanoilidis seeks summary judgment on that ground that Plaintiff's sole claim is one that has already been dismissed—that Emanoilidis failed to protect him from Defendant Carabetti. *See* Doc. 47 ¶¶ 5–7, 9–10; *see also* Doc. 48 at 7–8. Plaintiff concedes that Defendant Emanoilidis did not deny him mental health care. *See* Doc. 47-2 at 51; *see also* Doc. 56 at 2–3. Rather, the basis of his deliberate indifference claim is that Defendant Emanoilidis "did not keep [Defendant] Carabetti away from [him]." *See* Doc. 47-2 at 18–21, 24–25, 49–51; *see also* Doc. 56 at 2–3. The claim Plaintiff pursues against

Defendant Emanoilidis has already been dismissed. *See* Doc. 35 at 15–16. Accordingly, the Court will grant Defendant Emanoilidis's Motion.

### B. Defendants Carabetti & Weems's Motion

Defendants Carabetti and Weems invoke qualified immunity, arguing there is no evidence they violated Plaintiff's clearly established constitutional rights. *See* Doc. 57 at 12–14.

### i.     Relevant Law

"In order to receive qualified immunity, [a] public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quotation omitted). There is no dispute that Defendants were acting within their discretionary duties at the time of the incident. Where, as here, it is undisputed that Defendants were acting within the scope of their discretionary authority, the burden shifts to Plaintiff to prove that Defendants "(1) violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). Plaintiff must satisfy both prongs to survive a qualified-immunity defense. *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019).

The Eighth Amendment "prohibits the unnecessary and wanton infliction of pain, or the infliction of pain totally without penological justification." *Ort v. White*, 813 F.2d 318, 321 (11th Cir. 1987). At the same time, it is well understood that prison guards, who are charged with maintaining order and protecting inmates and staff, may use force when necessary. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *Williams v. Burton*, 943 F.2d 1572, 1575 (11th Cir. 1991). Accordingly, courts must construe an inmate's right to be free from cruel and unusual punishment consistent with a prison official's obligation to ensure a safe and secure institution. *Ort*, 813 F.2d at 321–22.

A prisoner against whom force is used to restore order demonstrates an Eighth Amendment violation "*only* if the measure taken 'inflicted unnecessary and wanton pain and suffering' caused by force used 'maliciously and sadistically for the very purpose of causing harm.'" *Williams*, 943 F.2d at 1575. Assessing whether an officer used more force than necessary to quell a disturbance or regain control of a prisoner requires courts to consider various factors, including the need for force, the extent of force used in relation to the prisoner's conduct, the threat of harm the prisoner posed to others, whether the officer tried to "temper the severity of a forceful response," and the injuries inflicted. *See id.*; *Whitley*, 475 U.S. at 321; *see also Skrtich v. Thornton*, 280

5

F.3d 1295, 1300 (11th Cir. 2002). A prisoner's lack of an injury is not dispositive but can be "evidence of the kind or degree of force that was used by [an] officer." *Charles v. Johnson*, 18 F.4th 686, 700 (11th Cir. 2021) (citing *Crocker v. Beatty*, 995 F.3d 1232, 1251 (11th Cir. 2021)).

In applying the *Whitley* factors, courts should "give a wide range of deference to prison officials acting to preserve discipline and security." *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007). Corrections officials are not required to "convince every inmate that their orders are reasonable and well-thought out," and "[c]ertainly . . . are not required to do so where an inmate repeatedly fails to follow those orders." *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). As such, "courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives." *Whitley*, 475 U.S. at 322. A case should not go to the jury "[u]nless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain." *Id.*

The *Whitley* factors do not apply when a prisoner alleges a prison official sexually assaulted him because a "sexual assault necessarily violates the Eighth Amendment." *DeJesus v. Lewis*, 14 F.4th 1182, 1196 (11th Cir. 2021).

A prison official sexually assaults a prisoner when he "engages in a sexual act with the prisoner . . . for [his] own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner." *Id.*

### ii.    Defendants' Evidence

In support of their Motion, Defendants rely primarily on Plaintiff's own contradictory statements of the incident, use-of-force reports, and video evidence. *See* Doc. 57 at 2–3, 5–6; *see also* Docs. 57-2, 57-3. According to Defendants' use-of-force reports, Defendant Carabetti, Defendant Weems, and a third officer used physical force against Plaintiff on February 24, 2021, because Plaintiff became aggressive when Defendants were attempting to return him to his cell. *See* Doc. 57-3 at 1. Defendants maintain that they escorted Plaintiff to his cell and once at the cell door, Plaintiff kicked a "fishing line" into his cell, so Defendant Weems went inside to retrieve it. *Id.* Plaintiff then "attempted to enter the cell in an aggressive manner toward [Defendant] Weems," prompting Defendant Carabetti to force Plaintiff inside his cell. *Id.* Defendants "forced [Plaintiff] onto the cell's bunk in the prone position" with the third officer's assistance. *Id.* Once Plaintiff stopped his aggressive behavior, the three officers exited Plaintiff's cell. *Id.*

The officer who helped Defendants Weems and Carabetti restrain Plaintiff, Jesse Rehill, wrote an incident report, summarizing the events as

7

described by Defendants Weems and Carabetti. *Id.* at 3. Additionally, a shift supervisor, Lieutenant Mason, who witnessed the incident and provided the closing statement for the hand-held camera, noted that Defendants and Officer Rehill used "physical force . . . to prevent staff battery." *Id.* at 1, 2. Lieutenant Mason further noted that Plaintiff had no visible injuries and "did not make any allegations of staff abuse or misconduct."[1] *Id.*

Video evidence, filed under seal, does not capture the inside of Plaintiff's cell at the time the alleged sexual assault took place. *See* Doc. 58.[2] However, footage from a fixed-wing camera aligns with Defendants' description of events insofar as what prompted officers to force Plaintiff inside his cell. On that footage, Defendants can be seen walking Plaintiff to his cell. *See* Doc. 58, FW at 12:50:41. The three stand at the door of the cell for a bit, and then Defendant

---

[1] The Warden reviewed Defendants' reports and noted, "The force used does not appear to be in compliance with [the Florida Administrative Code ("FAC")]." Doc. 57-3 at 1 (citing Fla. Admin. Code r. 33-602.210). There is no explanation why the use of force did not comply with the FAC and no specific subsection of the referenced chapter is cited. *See id.* However, there is no indication any involved officer sexually assaulted Plaintiff. *See id.* On the contrary, the report documents that Plaintiff made no allegations of staff abuse and sustained no injuries. *Id.* Even if Defendants violated a provision of the FAC when restraining Plaintiff or returning him to his cell, violations of state law or administrative procedures are not constitutional violations actionable under § 1983. *See Magluta v. Samples*, 375 F.3d 1269, 1279 n.7 (11th Cir. 2004) ("[T]he procedural requirements set out in [a state] regulation are not themselves constitutional mandates.").

[2] The DVD contains footage from a handheld ("HH") camera and a fixed-wing ("FW") camera. The Court will cite the video evidence according to document number (Doc. 58), followed by the camera type (HH or FW) and time stamp.

Weems can be seen entering the cell, while Defendant Carabetti stands with Plaintiff, who is in boxer shorts and cuffed behind his back. *Id.* at 12:50:48–12:51:05. The "fishing line" cannot be seen in the video, but shortly after Defendant Weems enters Plaintiff's cell, Defendant Carabetti makes a sudden movement, forcing Plaintiff into the cell. *Id.* at 12:51:08. A third officer rushes into the cell after them. *Id.* at 12:51:13. All three officers exit the cell about twenty-four seconds later. *Id.* at 12:51:37.

The hand-held camera operator starts recording about three minutes after the officers exit Plaintiff's cell, standing in the corridor directly opposite Plaintiff's cell.[3] *Id.* at 12:54:13. For most of the recording, Plaintiff cannot be seen because he is not standing at the cell door. *See generally id.*, HH. Two officers attempt to speak with Plaintiff through his cell door, but Plaintiff's responses, if any, cannot be heard. *Id.* at 00:56–2:35. Eventually, Defendant Emanoilidis arrives to attempt a psychological consult with Plaintiff.[4] *Id.* at 2:36. Officers and Defendant Emanoilidis make several attempts to encourage Plaintiff to come over to the door to speak with them. *See id.* at 3:26, 5:10, 5:37, 6:20, 6:42, 7:26–7:56. There is no indication from their body language and

---

[3] The cellblock is a rectangle with an open area in the center.

[4] Defendant Emanoilidis is not identified by name on the video but based on Plaintiff's statement in a grievance, this person, who is in civilian clothing, is Defendant Emanoilidis. *See* Doc. 1-1 at 10.

9

interactions with one another that Plaintiff is unconscious or in distress. *See id.* A nurse arrives at 1:00 p.m. *Id.* at 8:02. She briefly observes Plaintiff through the cell window and leaves. *Id.* at 8:54.

Because Plaintiff does not willingly come to his cell door, Lieutenant Mason directs the camera operator to walk over and record Plaintiff through his cell window. *Id.* at 9:23. Plaintiff is sitting on the floor at the far end of his cell, wearing only boxers. *Id.* He does not appear to be in physical distress or bleeding, and he partially complies with Lieutenant Mason's commands to turn around so his full body could be captured on video. *Id.* at 9:23–9:50. Plaintiff indicates that he is willing to relinquish his handcuffs, so Lieutenant Mason orders the camera operator to return to his original location across the from Plaintiff's cell. *Id.* at 9:52. Plaintiff relinquishes his handcuffs, and Lieutenant Mason explains for the camera that force was used against Plaintiff to "overcome his physical resistance to lawful commands," and that Plaintiff refused both medical and psychological assessments. *Id.* at 11:35–12:25.

### iii.    Plaintiff's Allegations

In his Complaint, Plaintiff vaguely alleges that he "was allowed to be raped by . . . [Defendant] Carabetti and his co-defendant [Weems]," but he provides no explanation. *See* Doc. 1 at 6. In a grievance Plaintiff filed with his Complaint, he alleged that Defendants Carabetti and Weems punched and

10

kicked him, and he "felt a finger or two go up [his] anus." Doc. 1-1 at 10. He claimed to have been conscious when the alleged sexual assault began but was "knocked . . . unconscious" at some point, so he did not know how the assault "ended." *Id.* He said that, when he woke up, multiple officers, the psych director (Defendant Emanoilidis), and a nurse were at his cell door "begging [him] to get up, but [he] couldn't," and he was not "pull[ed] out for treatment" even though "it was evident [he] had been beaten and raped" because he was bloody, and his boxers were down. *Id.* at 10–11.

At his deposition, Plaintiff testified that Defendant Weems "kicked [him] in the head," and Defendant Carabetti "jumped on [his] back . . . . [and] snatched [his] pants down and punched [him] in the rear." Doc. 57-2 at 27. According to Plaintiff, Defendants "knocked [him] out" and *then* raped him. *Id.* He claims he "woke up . . . with [his] boxers down." *Id.* at 28. Even though he allegedly was unconscious when the alleged sexual assault happened, Plaintiff testified, "I know I was raped. I know I was raped. I felt them trying to put something [a penis] in my mouth and I felt them pull my pants down. I know I was raped." *Id.* at 28, 30. Plaintiff testified that, after he "woke up," the inmate across the hall told him he had been raped, but that inmate refused to be a witness for him. *Id.* at 27. Another inmate, who "heard what was taking place," allegedly wrote a witness statement for him. *Id.* at 27–28.

Plaintiff provides no witness statement or other evidence with his Response. Rather, he contends the "video evidence proves [he] was pushed into a cell off camera and sexually abused," maintaining there is "no [other] explanation" why two officers who are bigger than him would keep him restrained in a cell for over twenty seconds. *See* Doc. 60 at 2. Plaintiff also contends he suffered broken ribs and other serious injuries, which he claims are documented in medical records from March and April 2021. *Id.* at 5. He provides no medical records, nor did he make such allegations in his Complaint.

### iv.    Conclusions

Because Defendants invoke qualified immunity, and it is undisputed they were acting within the scope of their discretionary authority at the relevant time, Plaintiff has the burden to demonstrate that Defendants violated his constitutional rights. He has not carried his burden. The allegation in his Complaint is exceedingly vague, and the allegation in his grievance contradicts the story he relayed at his deposition. For instance, in his grievance, he said he felt fingers enter his anus, but at his deposition, he said he felt his boxers come down and then he lost consciousness. Despite his testimony at his deposition that he "know[s he] was raped," his belief is not supported by any credible evidence but rather appears to be the product of his

12

mental illness, or is based on speculation or hearsay from another inmate who refuses to be a witness.

Not only do Plaintiff's own statements somewhat contradict each other, but Plaintiff's various contentions about what occurred before and after the alleged assault do not align with the video evidence on which he himself relies. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). First, Plaintiff contends in his Response to Defendants' Motion that there is no reason for Defendants to have forced him into his cell other than to assault him. *See* Doc. 60 at 2. But the video evidence confirms Defendants' statements that they used reactionary force because Plaintiff attempted to "aggressively" follow Defendant Weems inside his cell to retrieve contraband. *See* Doc. 58, FW at 12:50:48–12:51:08. The fact that a third officer rushed into Plaintiff's cell to assist Defendants lends credence to the fact that Plaintiff was being aggressive or engaging in conduct that warranted a reactionary use of force.

Second, in his grievance, Plaintiff claimed that when he regained consciousness, multiple officers, Defendant Emanoilidis, and a nurse were standing outside his cell "begging [him] to get up, but [he] couldn't." Doc. 1-1

13

at 10. The video footage shows that officers and Defendant Emanoilidis indeed were encouraging Plaintiff to come to his cell door through both hand gestures and verbal commands. *See* Doc. 58, HH at 3:26, 5:10, 5:37, 6:20, 6:42, 7:26–7:56. However, they were not "begging" him to do so, and their reactions and body language do not indicate that Plaintiff physically was unable to comply but rather that he refused to comply. Their reactions and body language also do not indicate that Plaintiff was in any serious distress or required medical assistance. Indeed, when the nurse arrived, she ascertained that Plaintiff did not require removal from his cell. *See id.* at 8:02. All staff members patiently waited for Plaintiff to willingly relinquish his handcuffs, and by all accounts, Plaintiff had no injuries, made no accusations of staff abuse, and refused to be removed from his cell for medical and psychological assessments. *See id.* at 9:52–12:25; *see also* Doc. 57-3 at 1, 4.

Third, Plaintiff also claimed in his grievance that it was obvious to the officers and medical providers who were at his cell front that he had been beaten and raped because he was bloody, and his boxers were down. *See* Doc. 1-1 at 10. The video evidence blatantly contradicts Plaintiff's description of his physical state: When the camera operator recorded Plaintiff through the window of his cell, Plaintiff was not bloody, nor were his boxers down. *See* Doc. 58, HH at 9:23.

14

Fourth, Plaintiff testified at his deposition that Defendants knocked him out and raped him, and when he woke up, another inmate housed across from him told him he had been raped. *See* Doc. 57-2 at 27. If, as Plaintiff contends, he was knocked unconscious and woke up when officers and medical providers were standing outside his cell, and an inmate across the hall told him he had been raped, that would have been heard on the hand-held camera because the camera operator was standing directly across the hall from Plaintiff's cell.  No such statement can be heard. *See generally* Doc. 58, HH.

Upon review, the Court concludes there was a legitimate penological need to use force against Plaintiff, and the force used was minimal and tempered, resulting in no obvious or reported physical injuries. Despite his claim that a "witness affidavit, sick-call evidence, and FDC grievances" support his allegations, *see* Doc. 60 at 3, Plaintiff fails to produce any evidence that Defendants Carabetti or Weems sexually assaulted him. He provides no witness affidavit and no medical records showing he reported or had injuries consistent with a sexual assault, and many of his statements are inconsistent or materially contradicted by the video evidence, as discussed.  In other words, there is no evidence that either Defendant "engage[d] in a sexual act with [Plaintiff] . . . for [his] own sexual gratification, or for the purpose of

15

humiliating, degrading, or demeaning [Plaintiff]." *See DeJesus*, 14 F.4th at 1196.

Although there is no video footage of events that occurred inside the cell, the video evidence—upon which Plaintiff himself primarily relies—aligns with Defendants' description of events and contradicts Plaintiff's own statements of what occurred or how he appeared before and after the alleged assault. Plaintiff's vague, conclusory, contradictory, self-serving allegations are insufficient to overcome a qualified immunity defense on summary judgment. *See Charles*, 18 F.4th at 700; *see also Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013) ("[T]o defeat a motion for summary judgment, [the non-moving party] must adduce specific evidence from which a jury could reasonably find in his favor; '[t]he mere existence of a scintilla of evidence in support of [his] position will be insufficient.'" (third and fourth alterations in original) (quoting *Anderson*, 477 U.S. at 252)).

Given the consistent description of the incident by Defendants and non-Defendant corrections witnesses, *see generally* Doc. 57-1, and the reliable video evidence that contradicts Plaintiff's statements in most material respects, *see generally* Doc. 58, the Court concludes this is the type of factual dispute envisioned by the Supreme Court as insufficient to proceed to a jury. *See Scott*, 550 U.S. at 380 ("Where the record taken as a whole could not lead a rational

16

trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'").

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.   Defendant Emanoilidis's Motion for Summary Judgment (Doc. 48) is **GRANTED**.

2.   Defendants Carabetti and Weems's Motion for Summary Judgment (Doc. 57) is **GRANTED**.

3.   The **Clerk** is directed to enter judgment in favor of Defendants, terminate any pending motions as moot, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, on this 9th day of February, 2026.

_____
JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

Jax-6
c:
Daryl Cortez Black
Counsel of Record

17